# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| vs. | * | Crim. No. PX-19-514 |
| TREVON RESHARD PALMER | * | |

******

## MEMORANDUM OPINION

Pending before the Court is Trevon Palmer's motion for review of the detention order originally issued in the above-captioned case. ECF No. 28. The motion is filed pursuant to 18 U.S.C. § 3143(a). For the following reasons, the motion is GRANTED.

**I.    Background**

On March 3, 2020, Defendant Trevon Palmer pleaded guilty to one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g). ECF No. 25. Previously, Palmer had been ordered detained after a hearing before a United States Magistrate Judge. ECF No. 11. Shortly after pleading guilty, Palmer filed a motion seeking release, arguing primarily that if the Court credits his guidelines argument that he had possessed the firearms solely for lawful sporting purposes, then his Guideline calculation would not require imprisonment, thus exempting him from the presumption of detention triggered by his guilty plea. ECF No. 28. Alternatively, Palmer argued that even if the Court does not credit his guidelines argument, he has established by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of another if released. *Id.*

Since then, COVID-19 has upended the world. Maryland and the detainees at the D.C. Jail certainly have not been spared. As of the morning of this opinion, reportedly 37 D.C. Jail

detainees have tested positive for COVID-19. *See "37 DC Inmates Have Tested Positive for Coronavirus,"* NBC 4 (Apr. 8, 2020, 5:16 p.m.), https://www.nbcwashington.com/news/local/37-dc-inmates-have-tested-positive-for-coronavirus/2268358/; *cf. Public Safety Agency COVID-19 Case Data*, DC.gov (last visited April 9, 2020), https://coronavirus.dc.gov/page/public-safety-agency-covid-19-case-data (reporting 27 detainee positives as of April 7, 2020). The Court has permitted the parties to supplement the pleadings (ECF Nos. 33-36) and the matter is now ripe for resolution.

## II. Facts Relevant to the Motion

### a. Offense Facts

Palmer pleaded guilty to possession of two firearms arising from two trips to a Maryland firing range. Specifically, Palmer admitted that on May 8 and October 15, 2019, he shot a firearm at the firing range. ECF No. 25-1. The parties also evidently agree that Palmer rented the firearms at the range, ECF Nos. 33–34, and thus, the only logical inference is that Palmer temporarily possessed the firearms to which he pleaded guilty for purposes of shooting them at the range.

Palmer's range visit was captured and shared in real time via Instagram, which subsequently led to the Government investigating him. During the investigation, Government agents also obtained video surveillance from the range as well as other Instagram posts. ECF Nos. 34-6–34-10. The other posts clearly depict Palmer posing as a would-be rapper. In some posts, he is flaunting narcotics and money. In another, he appears to be nestled beside what could be a firearm. Unlike the firing range firearms, the Court has no evidence that these firearms in the posts are real. However even if real, they are not the firearms to which Palmer has pleaded guilty to having possessed.

One Instagram post, (ECF No. 34-7) however, is a different matter. As Palmer

underscores, this post captures Palmer holding the firearm possessed at the range. Palmer is pointing and waving the firearm at the camera during a live exchange with others that he then posts, with graphics, for his Instagram followers. *Id.* He is not, at this moment, firing the weapon in the manner consistent with target practice, but instead, using it as a prop for his post.[1]

On November 4, 2019, Palmer was arrested on this offense and his home was searched. No firearms were found in his residence. At the time of his arrest, and before he had obtained Counsel, Palmer confessed to possessing the firearms at the range. ECF No. 25-1.

    **b.**    **Additional Facts Relevant to Release Request**

As the Pretrial Services Report reflects, Palmer is 24 years-old, in good health, and is a lifelong resident of Washington D.C. He does not have a passport and before his detention, he lived at the same residence since 2013, sometimes with his girlfriend of six years, Cashia Garland, and their children. Prior to his arrest, Palmer was employed at Nordstrom Rack as a Warehouse Stocker since September 2019 and had completed two months of six-month program in HVAC repair. *See also* ECF No. 33-5 ¶ 6. The report also verifies that Palmer is a budding rapper with his mother providing the funds for studio space.

Since age 17, Palmer has had his share of encounters with law enforcement. Of the numerous arrests, however, Palmer has been convicted of one offense, grand larceny, in Fairfax County, Virginia, where he was placed on seven years' probation. The transcript of his sentencing, however, makes clear that the length of his probationary term had been imposed to effectuate payment of restitution. ECF No. 33-2. That said, Palmer is pending a violation of his probationary term, evidently having tested positive for narcotics, then cut off his GPS bracelet and fled during his November 4, 2019 arrest. Although Fairfax had initially issued a warrant for

---

[1] As for the other posts, the Court agrees with the Government that they are troubling insofar as they appear to celebrate the drug trade. The Government asks the Court to infer that Palmer is offering the drugs for sale, however the Court equally notes that nowhere, at no time, has Palmer been charged with such an offense.

Palmer's arrest, it rescinded the warrant on April 7, 2020, and instead is requiring Palmer's personal appearance at a show cause hearing on October 22, 2020.

If this Court were to release Palmer, Garland has offered to act as his third-party custodian and have him reside with her and the children at her apartment in Washington, D.C. Garland, an Army veteran who served for seven years including a tour in Afghanistan, was honorably discharged in 2017. ECF No. 33-5 ¶ 1. Since 2016, Garland has worked at the State Department and holds a top-secret security clearance. *Id.* ¶ 3. Garland attests that Palmer is an involved and responsible parent who participates in the care of his child by a former relationship as well as their son. *Id.* ¶ 9.

### c. COVID-19

Mr. Palmer first alerted this Court to his request for release at his guilty plea and submitted pleadings in support before the COVID-19 pandemic arrived in this area. Since that time, the D.C. Jail where Palmer is housed has experienced its share of institutional challenges managing the outbreak of COVID-19. It is now the subject of more than one lawsuit and scores of release motions. Undoubtedly, given the presence of a highly contagious virus in inescapably close quarters in which fundamental social distancing may only be accomplished through lockdown and isolation, the number of infected detainees will likely go up.

Although Palmer is young and healthy, he is not invincible. And while certain pre-existing health conditions such as diabetes and asthma increase the risk of catastrophic outcomes for individuals who catch COVID-19, otherwise young and fit individuals have also suffered greatly when infected. *See, e.g.*, Chris Mooney, Brady Dennis, & Sarah Kaplan, *Hundreds of Young Americans Have Now Been Killed By the Coronavirus, Data Shows*, Wash. Post (Apr. 8 2020, 2:59 p.m.), https://www.washingtonpost.com/health/2020/04/08/young-people-coronavirus-deaths/.

### III. Analysis

The Court reviews Palmer's motion under the relevant Bail Reform Act provision, 18 U.S.C. § 3143(a)(1) which reads:

> **(a) Release or Detention Pending Sentence—**
>
> (1) . . . . the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. section 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c). If the judicial officer makes such a finding, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c).

Palmer moves for release, contending that his ultimate advisory guideline range "does not recommend a term of imprisonment." Alternatively, Palmer argues that he has demonstrated by clear and convincing evidence that he is not a danger or a flight risk. The Court addresses each argument in turn.

#### a. Advisory Sentencing Guidelines

U.S.S.G. § 2K2.1(b)(2) provides that,

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

In applying this provision, Comment 6 of this Guideline section further directs that the Court consider "the surrounding circumstances" of the firearm possession to include several non-exhaustive factors as:

1. the number and type of firearms and the amount and type of ammunition

2. the location and circumstances of possession and

3. actual use of the firearm

4. the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms)

5. and the extent to which possession was restricted by local law.

U.S.S.G. § 2K2.1 Cmt. 6.

The defendant bears the burden of demonstrating the applicability of the downward adjustment. *See, e.g.*, *United States v. Bertling*, 510 F.3d 804, 811 (7th Cir. 2007).

Considering the evidence presented to date,[2] the Court is not prepared to conclude that it would award the adjustment in Palmer's case. To be sure, Palmer rightly emphasizes that he possessed the firearms to which he admitted guilt at the firing range. Additionally, evidence supports that he used those firearms to engage in target practice, a lawful pursuit for anyone not convicted of a felony offense, and perhaps would trigger the downward adjustment in other cases. *See, e.g.*, *United States v. Bossinger,* 128 F.3d 28, 29–30 (3d Cir. 1993). Palmer's criminal history, a single conviction for larceny, does not involve a weapon, also counseling in favor of applying the downward adjustment.

The stumbling block for the strict application of this downward adjustment, however, is contemporaneous video evidence that Palmer then took the same firing-range gun and used it to record an Instagram video clip akin to his other rapper-style videos presented to this Court. *See* ECF No. 34-7. Palmer is pointing the firearm at the screen, mock shooting, while his Instagram account transmits the video to its recipient, who also appears to be mock shooting with his

---

[2] The Court recognizes that Palmer's sentencing has yet to occur. Accordingly, this Court expresses no opinion as to whether Palmer ultimately may be able to produce additional evidence or argument supporting the adjustment. The Court confines this decision solely to whether Palmer has demonstrated pursuant to 18 U.S.C. § 3143 that the Advisory Guideline range does not recommend a sentence of imprisonment on the current pleadings. The Court cannot so conclude at this juncture. At sentencing, Palmer may also request a downward variance based on these circumstances and for which the Court also takes no position at this time. The Court will watch carefully Palmer's conduct between now and sentencing, along with all other facts and circumstances, in assessing the propriety of such variance.

fingers toward the screen. *Id.* In this respect, the evidence fairly supports that Palmer used his access to firearms at the range to celebrate this culture, as depicted in the other videos submitted by the Government. Use of the firearm in this manner is not for any lawful *sporting* purpose, and not consistent with using the gun for simple target practice. Thus, even if the Court were to fully credit that the other video exhibits do not involve real firearms, and certainly not the firearm to which he pleaded guilty, sufficient evidence as to the firearm involved in offense exists to defeat the application of this adjustment at this time.

This particular video and similarly styled clips depict an immature and foolish young Palmer who celebrates the drug and gun culture online and in real time. Ordinarily, such expression may implicate one's freedom of expression; but when it broadcasts conduct clearly prohibited by federal criminal law (as it is applied to Palmer), the Government appropriately takes notice. The downward adjustment, therefore, does not apply. Palmer's advisory guideline range remains 15–21 months imprisonment. *See* ECF No. 37 ¶ 74.

**b. Remaining considerations**

Having found that the evidence does not support a no-prison advisory guideline range, the Court next turns to whether Palmer has demonstrated by clear and convincing evidence that his release would not pose a danger to the community or risk his non-appearance at sentencing. On this ground, the Court finds that Palmer may be released under exceptionally stringent conditions.

Without doubt, Palmer's recent track record is less than stellar in that he fled when the Officers attempted to arrest him. In his favor, however, Palmer has only one prior conviction for larceny, and the circumstances of this offense are confined to Palmer's brief possession of a firearm while shooting at a range on two separate occasions. As for his would-be rapper videos, they bespeak immaturity, lack of insight, and a danger that can be mitigated by 24-7 home

confinement that most closely approximates his current detention status.

The same can be said for Palmer's risk of flight. Although his flight from the police during his arrest counsels in favor of detention, significant countervailing evidence points toward release. Palmer maintains a close relationship with his partner, Ms. Garland, and remains an active co-parent to the son they have together as well as to his son from a prior relationship. Palmer also had been gainfully employed at the time of his arrest and was participating in an HVAC program. Garland, an Army veteran and State Department employee, is a suitable third-party custodian with an appropriate residence.

Consequently, the Court finds that release conditions can be fashioned to assure reasonably the safety of the community and Palmer's appearance in Court. Among the conditions of release fully memorialized in the Order setting Conditions of Release, the Court orders the following special conditions:

1. Palmer is placed on home confinement, 24-7 lockdown. Once Palmer is released from detention, he shall be transported directly home. Cashia Garland shall serve as his third-party custodian.

2. Palmer's confinement will be monitored through a smartphone that Garland must obtain for Palmer in advance of his release.

3. Palmer shall have **no contact**, in person or by phone (to include social media), with **anyone** other than immediate family (*e.g.*, his mother or co-parent) and his counsel.

4. Palmer and Garland must also consent in advance of release that any Pretrial Services Officer may visit and search the residence at any time without any other notice or approval apart from this Order. The scope of the search shall include Palmer's smartphone and any other electronic devices to which he has access.

5. Garland must declare under penalties of perjury and in advance of Palmer's release

that:

a. the residence is, and will remain, free of any firearms, ammunition, and unlawful narcotics.

b. that she will prohibit any person not otherwise immediate family or legal counsel from entering her home and will report any such violation of this condition immediately to the Pretrial Services Officer; and

c. that she will immediately report to the Pretrial Services Officer if Palmer has any phone or social media contact with anyone who is not immediate family or his counsel.

The purpose of these conditions it to make best efforts to replicate detention in the home. Taken together, and especially during these times of social distancing and applicable stay-at-home orders arising from the COVID-19 pandemic, these conditions mitigate Palmer's risk of flight and danger to the community sufficient to warrant release under the Bail Reform Act.

A final word regarding Palmer's release conditions. With this region in the throes of this pandemic, our local, state, and national leaders plead continuously with the public to maintain a level of hygiene and a measure of distance that the detained population, even under the best of circumstances, cannot abide. While this Court's determination does not turn on the presence of COVID-19 in the D.C. Jail, the Court nonetheless recognizes the benefits associated with revisiting the propriety of detention when new evidence and changed circumstances make release possible. Palmer, too, should recognize that he has been given this opportunity to do his part in stemming the tide of this horrific virus, and for many reasons—chief among them remaining home with his family pending sentencing—he ought not squander it.

The motion at ECF No. 28 is GRANTED.

| April 9, 2020 | /S/ |
|---|---|
| Date | Paula Xinis<br>United States District Judge |